## Jones Estate.

Argued March 23, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

*Francis T. Anderson,* with him *Frank W. Melvin,* for appellants.

*Boyd Lee Spahr,* with him *Paul D. Edelman,* for appellee.

OPINION BY DITHRICH, J., July 23, 1948:

The income beneficiaries, life tenants of a trust under the will of Margaret E. McCarty Jones, deceased, have appealed from the refusal of the learned auditing judge to require the trustee to compensate them for loss of income resulting from two nonlegal investments by the trustee and the disapproval of their claim for counsel fees. The losses resulted in the trustee being surcharged in the respective amounts of $6650 and $6140.

The learned auditing judge, in dismissing appellants' exceptions to his failure or omission to compensate them for loss of income, said: "At no time, in no manner, was claim made by anyone, for interest not reported in the accounts. No basis was provided for computation, if a

surcharge had been sought. The request now made is in disregard of the requirements of our rules of court, and comes too late." The general rule applicable in such cases, stated in 65 C. J. Trusts, §711(2), is as follows: "As a general rule a trustee is chargeable with interest where he makes improper investments in violation of his trust or fails to use proper care in selecting investments, . . ."; and in Restatement, Trusts, §210:

"(1) If the trustee purchases with trust funds property which it is his duty not to purchase, the beneficiary can

"(a) charge him with the amount of the trust fund expended in such purchase, *with interest thereon; . . .*" (Emphasis added.)

The record discloses that exceptants obviously were contending for both loss of principal and income. The broad statement of the auditing judge that "At no time, in no manner, was claim made by anyone, for interest . . ." is not supported by the facts; and, so far as no basis for computation having been provided "if a surcharge had been sought," it is well established that the income which it is estimated would have been obtained from a proper investment of the funds for which the trustee has been surcharged may be figured upon the basis of interest or of an average trust income on legal investments. Trusts and Trustees, Bogert, vol. 3, part 2, page 446, §708; *Ihmsen's Appeal,* 43 Pa. 431; *Norris's Appeal,* 71 Pa. 106; *Lewis Estate,* 349 Pa. 455, 37 A. 2d 559. But in the present case that question is now moot since, upon the petition to transfer these appeals from the Supreme to this Court, the trustee calculated that if the appellants were successful in prosecuting the appeals, the amount recoverable by each appellant would be $2175. There must have been some basis for the computation.

The statement that "The request now made is in disregard of the requirements of our rules of court, and comes too late" has reference to the rule requiring ob-

jections to an account filed to be in writing. Written objections had been filed by the guardian and trustee *ad litem* for the minor remaindermen and, as stated by the auditing judge, "The exceptants were permitted to join in the objections by the ad litem . . . and joined in the argument thereon." It was stipulated by and between counsel representing all parties in interest "re objection to the first account" of the trustee that ". . . the sole [remaining] question to be judicially determined in regards to this investment [for which accountant was surcharged in the sum of $6140] is whether or not, by the terms of the mortgage indenture, the trustee was exempted 'from responsibility for performing the ordinary duties of trustees' . . . and further if the Court find that by the terms of the mortgage indenture the trustee was so exempted whether or not the trustee in this estate should be surcharged for the *subsequent loss incurred on the investment.*" (Emphasis added.)

To hold that "subsequent loss incurred on the investment" applied only to principal, places, in our opinion, an entirely too narrow interpretation upon the language used. It is broad enough to cover both loss of principal and loss of income and is additional evidence in support of appellants' contention that it was clearly understood by all parties in the court below that they were contending for loss of income as well as for loss of principal.

*Hemphill's Appeal,* 18 Pa. 303, established the principle that, since the accountant has the burden of justifying all of the items in his accounts, it is proper to enter a surcharge for loss of principal through improper investments where the only exceptions were filed by the life tenant. The Court said, page 307: "The exceptions to this account are taken only by Mrs. Hemphill [life tenant]. Neither her children, who are entitled to the capital after her death, nor anybody in their behalf, are before us. It is therefore contended that we can, at most, only charge the trustees with the interest or dividends on the sum lost by the purchase of the stock. But

the accountants were bound to disclose the whole condition of the fund. In order to find what amount of interest was due to Mrs. Hemphill, it was necessary to set forth the capital sum, from which it accrued. If we cannot charge them with the principal now, they must be relieved from the interest hereafter."

In *Landis v. Scott,* 32 Pa. 495, the Court said, pages 503-504: "All profits inure for the benefit of the *cestui que trust.* That interest should be decreed against the appellant on the sums surcharged equally with the sums admitted, is too clear for argument. The surcharging rests upon the principle, that the sums added were either received or should have been. *Interest upon them is, therefore, necessary in order to give to the cestuis que trust the benefit which they would have enjoyed had the trustee been faithful."* (Emphasis added.)

The first and second assignments of error will be sustained, and the fourth assignment will be sustained in part.

The third assignment is to the failure and omission of the auditing judge to allow a counsel fee to counsel for the life beneficiaries out of the corpus of the trust estate. It has repeatedly been held that "The allowance or disallowance of counsel fees rests generally in the judgment of the court of the first instance and its decision will not be interfered with except for palpable error: Foulke's Estate, 334 Pa. 186, 190, 5 A. 2d 179; Rambo's Estate, 327 Pa. 258, 266, 193 A. 1": *Ward Estate,* 350 Pa. 144, 148, 38 A. 2d 50.

The objections in which the income beneficiaries joined were filed by the guardian *ad litem* for the minor remaindermen. He was allowed a counsel fee for the services rendered by him in procuring a surcharge, and his services were largely paralleled by those of the attorneys for the appellants. In *Long's Estate,* 143 Pa. Superior Ct. 176, 17 A. 2d 686, we said in an opinion by KELLER, P. J., pages 186-187:

"In Harrison's Est., supra, the court distinguishing the case from Kennedy's Est., 141 Pa. 479, 21 A. 671, where an allowance for counsel fees had been made to an *exceptant* out of the fund, said: 'In that case the allowance was only approved upon the peculiar facts stated in the opinion of the court below. And warning was expressly given that the action "must not be drawn into a precedent for the broad doctrine that, where exceptions are filed to the account of an executor, administrator or trustee, in the orphans' court, the exceptant is entitled to an allowance for counsel fees out of the fund. The rule in such case is that the exceptant must pay his own counsel." We regard this as a most salutary rule, and not to be entrenched upon or impaired in any way.' "

The third assignment will be overruled.

The first and second assignments of error are sustained, the third assignment is overruled, the fourth assignment is sustained in part, and it is ordered that each of the appellants be awarded the additional sum of $2175; the decree as modified is affirmed; costs to be paid by accountant.