509 A.2d 369

**Charles H. DORSETT, Sr. and Charles H. Dorsett, Jr., Appellants,**

**v.**

**Frances Newman HUGHES and Harry G. Hughes, Appellees.**

Superior Court of Pennsylvania.

Argued Jan. 21, 1986.

Filed May 14, 1986.

130

James J. Martin, Philadelphia, for appellants.

Vincent V. Carissimi, Philadelphia, for appellees.

Before CAVANAUGH, OLSZEWSKI and TAMILIA, JJ.

PER CURIAM:

The undisputed facts in the case before us are that Emil Harman died on June 22, 1982, leaving a last will and testament in which he named the appellants, Charles H. Dorsett and Charles H. Dorsett, Jr. who are attorneys, as executors of the estate. The deceased also named Frances Newman Hughes and her husband, Harry G. Hughes, as executors. The will was drawn by Charles H. Dorsett, the father of Charles H. Dorsett, Jr. Although both Mr. Dorsetts are lawyers licensed to practice law in Pennsylvania, they are not associated in the practice of law and maintain separate offices.

After Mr. Harman died, it was agreed between the parties that Harry G. Hughes would serve as sole executor and the other named executors would renounce and they did in fact renounce. It was also agreed by Mr. Hughes that Charles H. Dorsett, Sr. would serve as the attorney for the estate. At this point the clear waters of agreement become muddied by conflicting allegations. There is controversy as to the amount of compensation to be paid to Mr. Dorsett, notwithstanding that all of the parties on appeal agree that Charles H. Dorsett, Sr. was to be retained as attorney for the estate and that Harry G. Hughes would serve as sole executor.[1] Mr. Hughes claims that he retained Mr. Dorsett to represent him in his capacity as executor of the estate with no agreement as to fee. Mr. Dorsett claims that he was to receive a fee based on the gross value of the estate.

Both Mr. Dorsetts and Frances Newman Hughes filed renunciations of their right to serve as executor and letters testamentary were issued on June 17, 1982 to Harry H. Hughes by the Register of Wills. Shortly thereafter, Mr. Hughes decided to retain other counsel and on August 2,

---

1. It is admitted by the appellants that Charles H. Dorsett, Jr. performed no legal services for the Executor of the Estate of Emil Harman.

1982, he wrote to Mr. Dorsett telling him that he had retained new counsel for the estate and requesting that all files be turned over to his new counsel.

After Mr. Dorsett was dismissed as counsel for the estate, he commenced an action in assumpsit in July, 1983, seeking damages in the amount of $18,175.43 representing 7% of the gross value of the estate which the appellants allege was $259,649.64.[2] In their complaint in assumpsit the appellants stated:

4. After the death of Emil Harman, Charles H. Dorsett, Harry H. Hughes, and Frances Newman Hughes met to plan the administration of the Estate.

5. The parties present agreed that Charles H. Dorsett, Jr., Charles H. Dorsett and Harry H. Hughes would resign as Co-Executors and that Frances Newman Hughes would be sole Executrix. The parties agreed further that Charles H. Dorsett would be retained as attorney for the Estate and that the combined attorney's fee and commission of 10% would be divided 7% to Charles H. Dorsett and 3% to Frances Newman Hughes.

6. Frances Newman Hughes then declared that she preferred that Harry G. Hughes be sole Executor.

7. All parties present agreed that Harry G. Hughes would become sole Executor upon the same terms as previously agreed.

2. The complaint alleged that the appellees *"refuse to pay plaintiff Charles H. Dorsett, Esquire, the 7% commission agreed upon."* (Emphasis added.) This is contradicted by the answer of Charles H. Dorsett, Sr. to the request for admissions by the defendants below in which Mr. Dorsett, Sr. answered

"It was suggested that Frances Newman Hughes be the sole executor. She declined and Harry G. Hughes was selected. It was agreed that Charles H. Dorsett, Jr. and Charles H. Dorsett, Sr. would be retained as counsel at a fee of five (5%) percent of the value of the estate and would do the work involved in the administration of the estate for two (2%) percent of the *executor's commission.*" (Emphasis added.)

It is clear that Mr. Dorsett is not seeking merely "2 percent of the executor's commission." He is seeking 2% of the gross value of the estate for the performance of administrative duties and not 2% of whatever executor's commission Mr. Hughes may receive.

8. Charles H. Dorsett, Jr., who was not present at the meeting described above, later agreed to renounce based upon the agreement recited above.

The matter was heard before a board of arbitrators and an award was entered in favor of the appellants in the amount of $18,175.43 and "against Harry G. Hughes, as Executor of the Estate of Emil Harman only." An appeal was taken from the award of arbitrators and heard in the Orphans' Court Division of the Court of Common Pleas. The defendants below filed a motion for summary judgment which was granted by the Orphans' Court, by Silverstein, J., and the appellants' claim was dismissed without prejudice to the right of Charles H. Dorsett and Charles H. Dorsett, Jr. to present a claim for services at the audit of the account of Harry G. Hughes, Executor of the Estate of Emil Harman, deceased.

Whether the claim for $18,175.43 based on an alleged agreement to pay that fee may be dismissed by grant of a motion for summary judgment, centers on whether an executor may dismiss a lawyer retained by the executor as counsel for the estate at any time even if there has been an agreement to pay a specified or ascertainable fee.[3] The rule is succinctly stated in *Sundheim v. Beaver County Building & Loan Association,* 140 Pa.Super. 529, 533, 14 A.2d 349, 351 (1940):

A client may terminate his relation with an attorney at any time, notwithstanding a contract for fees, but if he

3. The statement of question as stated by appellants is:
   When co-executors who are attorneys renounce their co-executorships upon the agreement of their fellow co-executors to retain them as counsel and to pay a specified fee, is such an agreement enforceable?
   The complaint in assumpsit was against "Frances Newman Hughes and Harry G. Hughes, individually and as Executor of the Estate of Emil Harman, deceased." The statement of question involved implies imposition of liability on the appellees only as Executors. In any event, an individual would have no authority, real or apparent, to retain counsel for the executor of an estate. An attorney does not represent the estate or the heirs of the estate, but only the executor or personal representative of the estate. See *Kreider Estate,* 42 D & C2d 46 (Lebanon County, 1966).

does so, thus making the performance of the contract impossible, the attorney is not deprived of his right to recover on a quantum meruit a proper amount for the services which he has rendered.

In this case, the appellants claim a legal fee of over $18,000.00 based solely on an alleged agreement by the executor to pay a fee consisting of a percentage of the gross value of the estate.[4] Such an agreement, even if made, would not be enforceable. Attorney's fees in an estate are based on the reasonable value of the service rendered and subject to the approval of the Orphans' Court. In determining the reasonableness of counsel fee in an estate an appellate court will not disturb the decision of the Orphans' Court in the absence of an abuse of discretion or error of law. *Lohm Estate*, 440 Pa. 268, 269 A.2d 451 (1970). See also *Barth Estate*, 170 Pa.Super. 163, 84 A.2d 256 (1951); *Jones Estate*, 163 Pa.Super. 129, 60 A.2d 366 (1948); *Remick's Pennsylvania Orphans' Court Practice*, Vol. 5a, 1980, § 39.10 pp. 328–329.

With respect to reasonableness of counsel fee in an estate:

> The facts and factors to be taken into consideration in determining the fee or compensation payable to an attorney include: the amount of work performed; the character of the services rendered; the difficulty of the problems involved; the importance of the litigation; the amount of money or value of the property in question; the degree of responsibility incurred; whether the fund involved was "created" by the attorney; the professional

---

**4.** An analogous situation because of the fiduciary relationship involved is the relationship of a township solicitor to the township. The Supreme Court stated in *Ballou v. State Ethics Committee*, 496 Pa. 127, 134, 436 A.2d 186, 189 (1981):

> Unlike a public employee, a solicitor has no enforceable right to continue in his position for the tenure of his appointment. Our cases have held that, as a consequence of the solicitor's confidential relationship with the appointing body which he serves, the solicitor is removable at the will of the appointing power. Even if appointed for a fixed term and salary, the solicitor has no contractual right to recover any resulting loss in compensation.

skill and standing of the attorney in his profession; the results he was able to obtain; the ability of the client to pay a reasonable fee for the services rendered; and, very importantly, the amount of money or the value of the property in question.[4] *Huffman Estate* (No. 3), 349 Pa. 59, 64, 36 A.2d 640, 151 A.L.R. 1384 [1944]; *Bickel Appeal,* 388 Pa. 270, 276, 130 A.2d 498 [1957]; *Fraiman Estate,* 408 Pa. 442, 448, 184 A.2d 494 [1962]; *Thompson Estate,* 426 Pa. 270, 282, 332 [232] A.2d 625.

*Trust Estate of LaRocca,* 431 Pa. 542, 546–47, 246 A.2d 337, 339 (1968).

Decedent's estates are subject to the jurisdiction of the Orphans' Court Division of the Court of Common Pleas, 20 Pa.C.S. § 711. Counsel fees payable to an attorney for an estate are therefore paid from funds subject to the Orphans' Court's jurisdiction and scrutiny. The executor must account to the court for fees paid. "An executor or a trustee is an officer of the orphans' court and accountable to such court for all his actions of commission and omission in the performance of his fiduciary duties; *such duty to account embraces all payments made from estate or trust funds by way of compensation to himself or his counsel."* *Thompson Estate,* 426 Pa. 270, 276, 232 A.2d 625, 628 (1967). (Emphasis added.) See also *Standard Pennsylvania Practice,* 2d, § 4:74, page 420.

Counsel for the executor or other personal representative in an estate has a fiduciary relationship with the personal representative who himself has a similar fiduciary obligation to the estate. It is not enough that the executor approve counsel fee, but the Orphans' Court which has jurisdiction over the estate from which the fee is to be paid must also approve its reasonableness. Where "the fee claimed [is] for services rendered in settlement of an estate, the court itself is amply able to appraise the reasonableness of the fee upon a mere recital of the services rendered." *Lare Estate,* 368 Pa. 570, 576, 84 A.2d 334, 338 (1951). In *Berkowitz Estate,* 344 Pa. 485, 486, 26 A.2d 295, 296 (1942) the Supreme Court noted:

The fixing of fees for services of counsel in the settlement of an estate, or other matter under the eye of the court, rests largely in the judgment of the court below, and its decision will not ordinarily be disturbed on appeal. As said in *Re Good's Estate*, 150 Pa. 307, 310, 24 A. 623 [1892]: "The amount of fees to be allowed to counsel, always a subject of delicacy, if not difficulty, is one peculiarly within the discretion of the court of first instance. Its opportunities of judging the exact amount of labor, skill, and responsibility involved, as well as its knowledge of the scale of professional compensation usual at the time and place, are necessarily greater than ours, and its judgment should not be interfered with except for plain error." See also *In re Wood's Estate*, 272 Pa. 8, 12, 13, 115 A. 865 [1922]; *In re Rambo's Estate*, 327 Pa. 258, 266, 193 A. 1 [1937]; *In re Davidson's Estate*, 334 Pa. 389, 395, 6 A.2d 73 [1939].

In summary, the fees of an attorney for the executor of an estate must meet the test of reasonableness notwithstanding an agreement to pay a specified fee or one based on the value of the estate. In the instant case, the appellants were not basing their claim on the reasonable value of their services, but only on alleged agreement to pay a fee based on a percentage of the gross value of the estate. Had Mr. Dorsett, Sr. served as counsel for the estate during its entire administration and had also performed administrative duties ordinarily performed by the personal representative, the court at the audit of the account might have determined that the requested fee was reasonable and therefore approved it. However, such was not the case, as Mr. Dorsett served only for a short period of time when the executor removed him as counsel, as he had a right to do.

Summary judgment was entered in favor of all appellees. The entry of summary judgment is proper under Pa.R.C.P. 1035 when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. See *Thorsen v. Iron & Glass Bank*, 328 Pa.Super. 135, 476 A.2d 928 (1984). In considering a motion for

summary judgment the court must view the evidence in the light most favorable to the non-moving party and enter judgment only if the case is clear and free from doubt. *Berardi v. Johns-Manville Corp.*, 334 Pa.Super. 36, 482 A.2d 1067 (1984); *Acker v. Palena*, 260 Pa.Super. 214, 393 A.2d 1230 (1978); *Thompson Coal Co. v. Pike Coal Co.*, 488 Pa. 198, 412 A.2d 466 (1979).

Notwithstanding an agreement to pay a determinable fee to Mr. Dorsett, Sr., the executor was free to terminate the relationship of attorney and client at any time and he did so shortly after the administration of the estate commenced. The appellees were entitled to judgment as a matter of law in a claim based on an alleged agreement to pay a specific or determinable fee. The appellants are not without a remedy and the Orphans' Court by its order of September 6, 1984, specifically permitted them to present a claim for legal services at the audit of the executor's account. At that time, the Orphans' Court may in the exercise of its sound discretion, award a reasonable counsel fee to Mr. Dorsett, Sr.

Order affirmed.